**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

MAY 2 1 2008

Clerk, U.S. District and
Bankruptcy Courts

ATLANTICARE REGIONAL MEDICAL
CENTER, fka Atlantic City Medical Center
Jimmie Leeds Road, Pomona, NJ 08248

BAYSHORE COMMUNITY HOSPITAL
727 North Beers Street, Holmdel, NJ 07733

CAPE REGIONAL MEDICAL CENTER
fka Burdette Tomlin Memorial Hospital
2 Stone Harbor Boulevard, Cape May, NJ 08210

CAPITAL HEALTH SYSTEM AT FULD
750 Brunswick Avenue, Trenton, NJ 08638

CAPITAL HEALTH SYSTEM AT MERCER
446 Bellevue Avenue, Trenton, NJ 08618

CENTRASTATE MEDICAL CENTER
901 West Main Street, Freehold, NJ 07728

CLARA MAASS MEDICAL CENTER
1 Clara Maass Drive, Belleville, NJ 07109

COLUMBUS HOSPITAL
495 North 13th Street, Newark, NJ 07107

COMMUNITY MEDICAL CENTER
99 Highway 37 West, Toms River, NJ 08755

DEBORAH HEART & LUNG CENTER
200 Trenton Road, Browns Mills, NJ 08015

EAST ORANGE GENERAL HOSPITAL
300 Central Avenue, East Orange, NJ 07018

FORREST S. CHILTON III MEMORIAL
HOSPITAL, dba Chilton Memorial Hospital
97 West Parkway, Pompton Plains, NJ 07444

HUNTERDON MEDICAL CENTER
2100 Westcott Drive, Flemington, NJ 08822

Case: 1:08-cv-00872
Assigned To : Kessler, Gladys
Assign. Date : 5/21/2008
Description: Admn. Agency Review

/

IRVINGTON GENERAL HOSPITAL
832 Chancellor Avenue, Irvington, NJ  07111

JERSEY SHORE MEDICAL CENTER
1945 Route 33, Neptune, NJ  07753

JFK MEDICAL CENTER
65 James Street, Edison, NJ  08818

KENNEDY MEMORIAL HOSPITALS – UMC
2201 Chapel Avenue, West, Cherry Hill, NJ  08002

KIMBAL MEDICAL CENTER
600 River Avenue, Lakewood, NJ  08701

LOURDES MEDICAL CENTER OF
BURLINGTON CO.
218 Sunset Road, Willingboro, NJ  08046

MEMORIAL HOSPITAL OF BURLINGTON
COUNTY
175 Madison Avenue, Mt. Holly, NJ  08060

MONMOUTH MEDICAL CENTER
300 Second Avenue, Long Branch, NJ  07740

MOUNTAINSIDE HOSPITAL
1 Bay Avenue, Montclair, NJ  07042

MUHLENBERG REGIONAL MEDICAL
Park Avenue & Randolph, Plainfield, NJ  07060

OCEAN MEDICAL CENTER
425 Jack Martin Boulevard, Brick, NJ  08724

OUR LADY OF LOURDES MEDICAL CENTER
1600 Haddon Avenue, Camden, NJ  08103

PRINCETON HEALTHCARE SYSTEM
fka The Medical Center at Princeton
253 Witherspoon Street, Princeton, NJ  08540

RARITAN BAY MEDICAL CENTER
530 New Brunswick Ave, Perth Amboy, NJ  08861

2

RIVERVIEW MEDICAL CENTER
  1 Riverview Plaza, Red Bank, NJ 07701

RWJ UNIVERSITY HOSPITAL AT HAMILTON
  1 Hamilton Health Place, Hamilton, NJ 08690
SHORE MEMORIAL HOSPITAL
  1 East New York Ave., Somers Point, NJ 08244

SOMERSET MEDICAL CENTER
  110 Rehill Avenue, Somerville, NJ 08876

SOUTH JERSEY HOSPITAL, INC.
dba Elmer Hospital
  501 West Front Street, Elmer, NJ 08318

SOUTH JERSEY HOSPITAL, INC.
dba South Jersey Healthcare Regional Medical
Center
  1505 West Sherman Avenue, Vineland, NJ 08360

SOUTHERN OCEAN COUNTY HOSPITAL
  1140 Route 72 West, Manahawkin, NJ 08050

ST. JAMES HOSPITAL
  155 Jefferson Street, Newark, NJ 07105

ST. MICHAEL'S MEDICAL CENTER
  111 Central Avenue, Newark, NJ 07102

TRINITAS HOSPITAL
  225 Williamson Street, Elizabeth, NJ 07207

UNION HOSPITAL
  1000 Galloping Hill Road, Union, NJ 07083

WEST JERSEY HOSPITAL
  90 Brick Road, Marlton, NJ 08053

**Plaintiffs,**

**v.**

**MICHAEL O. LEAVITT, in his official capacity as
SECRETARY OF THE UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN
SERVICES,**
                    **Defendant.**

3

**COMPLAINT**

**NATURE OF ACTION**

1.      This is an action for declaratory and injunctive relief brought by certain New Jersey hospitals (the "Plaintiff Hospitals") against the Secretary of Health and Human Services (the "Secretary").  The Plaintiff Hospitals challenge the Secretary's computation of the Imputed Rural Floor Wage Index for Federal Fiscal Year ("FFY") 2005 for New Jersey hospitals, which had the effect of lowering the Plaintiff Hospitals' Medicare reimbursement.  As more fully described below, the Secretary in developing the "Imputed Rural Floor" Wage Index for New Jersey improperly determined that Massachusetts was an "all-urban" state in FFY 2005 and therefore improperly included indexes from Massachusetts in the calculation of the Imputed Rural Floor Wage Index for New Jersey.  Similarly, the Secretary improperly excluded the wage index of the District of Columbia in the calculation of the New Jersey Wage Index Imputed Rural Floor.  Both decisions by the Secretary were contrary to the provisions of 42 U.S.C.A. § 1395ww(d)(3)(E), and both were arbitrary, capricious, and an abuse of discretion.  The unlawful inclusion of the Massachusetts wage indexes in the calculation of the New Jersey Imputed Rural Floor Wage Index and the unlawful exclusion of the wage index from the District of Columbia in that computation have the aggregate effect of lowering Medicare reimbursement for each of the Plaintiff Hospitals in an aggregate amount exceeding $50 million.  The Plaintiff Hospitals seek relief from this court to avoid that financial impact.

## PARTIES

2.    The Plaintiff Hospitals consist of two groups.  The first group (Group 1)

comprises the following hospitals (in Provider number order):

| Provider No. | Provider Name |
|---|---|
| 31-0010 | Medical Center at Princeton, The |
| 31-0011 | Burdette Tomlin Memorial Hospital |
| 31-0022 | West Jersey Hospital |
| 31-0029 | Our Lady of Lourdes Medical Center |
| 31-0031 | Deborah Heart & Lung Center |
| 31-0032 | South Jersey Hospital |
| 31-0039 | Raritan Bay Medical Center |
| 31-0041 | Community Medical Center |
| 31-0044 | Capital Health System at Mercer |
| 31-0057 | Memorial Hospital of Burlington County |
| 31-0061 | Lourdes Medical Center of Burlington Co. |
| 31-0064 | Atlanticare Regional Medical Center |
| 31-0069 | Elmer Community Hospital |
| 31-0075 | Monmouth Medical Center |
| 31-0084 | Kimbal Medical Center |
| 31-0086 | Kennedy Memorial Hospitals – UMC |
| 31-0092 | Capital Health System at Fuld |
| 31-0108 | JFK Medical Center |
| 31-0110 | RWJ University Medical at Hamilton |
| 31-0111 | CentraState Medical Center |
| 31-0112 | Bayshore Community Hospital |
| 31-0113 | Southern Ocean County Hospital |

3.    The second group (Group 2) comprises the following hospitals (in

Provider number order):

| Provider No. | Provider Name |
|---|---|
| 31-0005 | Hunterdon Medical Center |
| 31-0009 | Clara Maass Medical Center |
| 31-0013 | Irvington General Hospital |
| 31-0017 | Chilton Memorial Hospital |
| 31-0018 | St. James Hospital |
| 31-0027 | Trinitas Hospital |
| 31-0034 | Riverview Medical Center |
| 31-0047 | Shore Memorial Hospital |
| 31-0048 | Somerset Medical Center |

| 31-0052 | Ocean Medical Center |
| 31-0054 | Mountainside Hospital |
| 31-0063 | Muhlenberg Regional Medical Center |
| 31-0073 | Jersey Shore Medical Center |
| 31-0083 | East Orange General Hospital |
| 31-0090 | Union Hospital |
| 31-0093 | Columbus Hospital |
| 31-0096 | St. Michael's Medical Center |

4.    The Plaintiff Hospitals in FFY 2005 were short-term, acute care hospitals located in New Jersey. The Plaintiff Hospitals are providers of services as defined in the Social Security Act, 42 U.S.C.A. § 1395x(u), and have entered into agreements with the Secretary to provide services to Medicare beneficiaries pursuant to 42 U.S.C.A. § 1395cc. The Plaintiff Hospitals receive payment for services rendered to Medicare beneficiaries.

5.    Defendant Michael O. Leavitt is the Secretary of the United States Department of Health and Human Services ("HHS"). The Plaintiff Hospitals are suing the Secretary in his official capacity only.

6.    The Centers for Medicare & Medicaid Services ("CMS") is a federal agency within HHS. CMS administers the Medicare program.

## JURISDICTION AND VENUE

7.    The Plaintiff Hospitals in Group 1 appealed to the Provider Reimbursement Review Board ("PRRB") within 180 days following the publication in the Federal Register of the FFY 2005 Imputed Rural Floor Wage Index for New Jersey, which is the subject of this suit. In a letter dated February 9, 2005, to the PRRB, Group 1 of the Plaintiff Hospitals verified that they constituted a group appeal before the PRRB. On January 4, 2008, the Group 1 Hospitals submitted a request for expedited judicial review with the PRRB contending that the PRRB lacks the authority to determine the

6

legal questions concerning the final decisions of the Secretary to include Massachusetts as part of the New Jersey Imputed Rural Floor Wage Index computation, and to exclude the District of Columbia from that computation.

8.    On March 24, 2008, the PRRB determined it had jurisdiction over all Group 1 Hospitals and granted Group 1 Hospitals' request for expedited judicial review. This permits the Group 1 Hospitals to file this challenge in federal district court pursuant to 42 U.S.C.A. § 1395oo(f)(1).

9.    The Plaintiff Hospitals in Group 2 appealed within 180 days of their receipt of Notices of Program Reimbursement ("NPRs") covering a cost-reporting period that included a portion of a year affected by the FFY 2005 Imputed Rural Floor Wage Index for New Jersey, which is the subject of this suit. In a letter dated January 5, 2007, Group 2 of the Plaintiff Hospitals requested that the wage index issue in their individual appeals be consolidated in a group appeal with the PRRB. On March 28, 2008, the Group 2 Hospitals submitted a request for expedited judicial review with the PRRB contending that the PRRB lacks the authority to determine the legal questions concerning the final decisions of the Secretary to include Massachusetts as part of the New Jersey Imputed Rural Floor Wage Index computation, and to exclude the District of Columbia from the computation.

10.    On April 23, 2008, the PRRB determined it had jurisdiction over all Group 2 Hospitals and granted Group 2 Hospitals' request for expedited judicial review. This permits the Group 2 Hospitals to file their challenge in federal district court pursuant to 42 U.S.C.A. § 1395oo(f)(1).

11.    Thus, both Groups 1 and 2 Plaintiff Hospitals have fully exhausted their administrative remedies and are entitled to judicial review pursuant to 42 U.S.C.A. § 1395oo(f) and 5 U.S.C.A. §§ 701-706

12.    The court has subject matter jurisdiction over this case pursuant to 42 U.S.C.A.§ 1395oo(f)(1), 5 U.S.C.A. §§ 701-706 and 28 U.S.C.A. § 1331.

13.    Venue is proper in the District of Columbia pursuant to 42 U.S.C.A. § 1395oo(f)(1) and 28 U.S.C.A. § 1391(e)(1).

## STATEMENT OF FACTS

### *The Inpatient Prospective Payment System - Generally*

14.    The Social Security Act (the "Act") establishes a program of health insurance for the aged and the disabled, commonly known as the Medicare program. *See* 42 U.S.C.A. §§ 1395 *et seq.*; 42 C.F.R. Parts 400-429 and 462-1008. Section 1886 of the Act, codified at 42 U.S.C.A. § 1395ww, establishes a system of payment for the operating and capital-related costs of acute care hospital inpatient stays under Medicare Part A (Hospital Insurance). The system is called the Inpatient Prospective Payment System ("PPS").

15.    Under PPS, hospitals are paid a fixed amount for each patient treated, depending upon the diagnosis and type of treatment provided, and regardless of the costs or amount of services provided to an inpatient. 42 U.S.C.A. § 1395ww(d). Hospitals paid under PPS are sometimes called "subsection (d) hospitals," a reference to subsection (d) of 42 U.S.C.A. § 1395ww. A "subsection (d) hospital" means "a hospital located in one of the 50 states or the District of Columbia other than [certain enumerated

hospitals]." 42 U.S.C.A. § 1395ww(d)(1)(B). The Plaintiff Hospitals were in FFY 2005 subsection (d) hospitals, reimbursed under PPS.

16. To calculate payment amounts under PPS, the Secretary initially determines a standardized, nationwide "federal rate," which is the nationally-calculated average cost of a typical inpatient stay. *See* 42 U.S.C.A. § 1395ww(d)(3); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999). The federal rate consists of two components: (a) the portion that can be attributed to labor-related costs and (b) a portion attributable to non-labor related costs. The Secretary then adjusts the labor-related portion of the federal rate to account for geographic-area differences in hospital wage levels. Thus, the amount of payment that a hospital receives for a given patient is calculated according to a formula that relies, in part, on the hospital's labor costs. *See* 42 U.S.C.A. § 1395ww(d)(3)(E).

### *The Wage Index*

17. Labor costs vary depending on a hospital's geographic location. To account for these variations, the Act requires the Secretary to adjust the labor component of the PPS rate by using an adjustment factor, known as the wage index. The wage index is a comparison of labor costs in the hospital's geographic area with average labor costs nationally.

18. Specifically, the statute states that:

> the Secretary shall adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates . . . for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level.

42 U.S.C.A. § 1395ww(d)(3)(E).

19.     Recognizing that wage levels do not remain static, the statute further instructs the Secretary to update this statutory "factor"—that is, the wage index— annually through the use of wage surveys. *Id.* The Secretary currently uses the annual cost reports filed by subsection (d) hospitals to collect this data.

20.     Each year, the Secretary engages in notice and comment rulemaking to establish the wage index for the upcoming federal fiscal year, which begins on October 1.

21.     Because of the time it takes for all hospital wage data to be collected and reviewed, there is a lag between the collection of wage data to determine the wage index and its application. For example, CMS used wage data from cost reports beginning during FFY 2001 to determine the wage indexes to be used in PPS payments for FFY 2005 (which began October 1, 2004).

22.     For purposes of determining the wage index, CMS classifies hospitals into geographic areas based on definitions established by the Office of Management and Budget ("OMB"). *See* 42 U.S.C.A. § 1395ww(d)(2)(D). Some geographic areas are classified as urban, and other geographic areas, as rural.

23.     Prior to FFY 2005, CMS determined whether a hospital was urban or rural based on whether it was located in a Metropolitan Statistical Area ("MSA") according to OMB data from the 1990 Census. Those hospitals that were located in MSAs were considered urban, and hospitals not located in MSAs were considered rural. Beginning with FFY 2005, however, CMS adopted revised OMB definitions of Core-Based Statistical Areas ("CBSAs") based on the 2000 Census. The use of the CBSAs resulted in a vast realignment of hospitals throughout the country for wage index purposes. To

ease this transition for those hospitals that would suffer reduced reimbursement due to the CBSA designations, CMS determined that, for FFY 2005, these hospitals would receive a wage index based 50% on the wage index the hospital would have had under the old MSA definitions, and 50% on the wage index the hospital would received under the CBSA definitions. 69 Fed. Reg. 48,916, 49,033 (Aug. 11, 2004).

24.    A state can have multiple urban areas for wage index purposes, each containing one or more hospitals. For rural hospitals, however, their classified treatment is different. The Secretary groups all hospitals located in rural areas in a state into a single geographic rural area for the state for wage index purposes. Each urban and rural area has its own wage index.

25.    The statute requires CMS to use the wage data from each subsection (d) hospital to calculate two amounts. 42 U.S.C.A. § 1395ww(d)(3). The first amount is the average hourly wage for the geographic area in which the hospital is located. The second amount is the national average hourly wage.

26.    By comparing the average hourly wage for a geographic area to the national average hourly wage, the Secretary establishes a ratio for use in determining payments under the PPS for hospitals in a particular area. This ratio is the "area wage index."

27.    The wage data that CMS uses is derived from the wages and wage-related costs reported by hospitals in a prior cost year (the "Survey Year"), and is collected from all "subsection (d) hospitals." The data from the Survey Year is used to calculate the wage indexes for a later "Rate Year." The FFY 2005 Rate Year wage indexes are based

on hospital wage data that CMS was required to collect from subsection (d) hospitals from cost-reporting periods beginning in the Survey Year—FFY 2001.

28.    An area's wage index is intended to reflect the labor costs for hospitals in that area relative to the labor costs for other hospitals in the country. Assuming that the wage index is accurate, an area with labor costs higher than the national average will have an area wage index greater than 1.0 and an area with labor costs lower than the national average will have an area wage index lower than 1.0. Each area's wage index is factored into the calculation of the labor component of a hospital's PPS payments. An area wage index of greater than 1.0 will result in relatively higher Medicare payments for hospitals in that area, and an area wage index of less than 1.0 will result in relatively lower Medicare payments for hospitals located in that area.

### The Wage Index Rural Floor and Imputed Rural Floor

29.    Generally, a hospital's payment is based on the wage index for the geographic area in which the hospital is located. There are some exceptions, however. One of these exceptions is that the wage index for an urban hospital cannot be lower than the wage index for rural hospitals in the same state. Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4410, 111 Stat. 251, 402 (Exhibit P-4). In other words, the rural wage index for a state becomes a "floor" for all areas of the state, so that no urban area can have a wage index that is lower than the rural areas of the state.

30.    Certain states do not have any rural areas, however. For FFY 2005, CMS determined to create an "imputed rural floor" for those states in order to provide the same protection to urban hospitals in these states as urban hospitals have in those states that do have rural areas.

31.    The regulation for the Imputed Rural Floor Wage Index is at 42 C.F.R. § 412.64(h)(4) (2004).  It requires the Secretary to compute an imputed rural floor for "all-urban States" by using ratios of the highest to lowest wage index in each all-urban State.  The regulations define an "all-urban State" as follows:

> a State with no rural areas, as defined in this section, or a State in which there are no hospitals classified as rural.  A State with rural areas and with hospitals reclassified as rural under § 412.103 is not an all-urban State.

42 C.F.R. § 412.64(h)(5).  For FFY 2005, the Secretary has determined that New Jersey, Rhode Island and Massachusetts are "all-urban States."

32.    Under the regulation, the Imputed Rural Floor Wage Index for New Jersey is determined as follows:

> (1) compute the following two ratios:
>     (a)    the ratio of the low to high wage index in New Jersey and
>     (b)    the average of the ratios of the low to high wage indexes for all of the "all-urban States."
>
> (2) multiply the higher of the two ratios under step (1) times the highest wage index in New Jersey.

33.    Thus, the New Jersey Imputed Rural Floor Wage Index is directly affected by the Secretary's inclusion and exclusion of wage indexes from other "all-urban" areas in other locations.

### *Calculation of the FFY 2005 New Jersey Imputed Rural Floor Wage Index*

34.    New Jersey is the most densely populated state in the union.  The state is considered to be an "all-urban state," with no rural areas under either the MSA or CBSA definitions.  Therefore, the state has no "rural floor wage index" of its own.  Nevertheless, in FFY 2005, 22 New Jersey hospitals received on "imputed" rural floor wage index as a result of 42 C.F.R. § 412.64(h)(4).

13

35.    In computing the Imputed Rural Floor, the Secretary's formula included, as part of the computation, Massachusetts wage indexes based on the assumption that Massachusetts was an "all-urban state," even though in the 2001 Survey Year, as more fully described below, one or more hospitals in Massachusetts were considered rural. The Imputed Rural Floor computation also excluded the wage index from the District of Columbia, even though the District of Columbia has no rural area or rural hospitals.

### *Critical Access Hospitals*

36.    As part of the Balanced Budget Act of 1997, Public Law No. 105-33, Congress established a new type of Medicare provider called the Critical Access Hospital ("CAH"). Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4201, codified at 42 U.S.C.A. § 1395i-4. A CAH is a hospital of limited size that provides acute care to patients for relatively short durations of stay. Currently, the statute limits CAHs to 25 beds for acute inpatient care and average lengths of stay of no more than 96 hours. 42 U.S.C.A. § 1395i-4(c)(2)(B)(iii). CAHs must also be located in rural areas. 42 U.S.C.A. § 1395i-4(c)(2)(B)(i).

37.    CAHs are not reimbursed under PPS, but instead are reimbursed on the basis of the facility's reasonable costs. For many facilities, reasonable cost reimbursement is more favorable than reimbursement under PPS.

38.    Under the Act, subsection (d) hospitals are permitted to convert to CAH status in order to take advantage of the more favorable reimbursement opportunity for CAHs. To qualify as a CAH, a facility must satisfy the requirements of CAH status, such as the limitation on number of beds, the limitation on patients' average length of stay, and

the requirement that the facility be located in a rural area. Once the hospital converts to CAH status, it is no longer a "subsection (d) hospital."

### The Imputed Rural Floor Wage Index—Massachusetts Included

39.    Prior to FFY 2004, the Secretary consistently used wage data from all hospitals that were subsection (d) hospitals in the Survey Year to calculate the wage indexes. Even though a number of subsection (d) hospitals had converted to CAH status after the Survey Year and before CMS had published the final PPS rates for FFY Rate Years 1999-2003, CMS used the facility's wage data so long as the facility had been a subsection (d) hospital during the corresponding Survey Year. *See* Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1999 Rates, 63 Fed. Reg. 40, 954 (July 31, 1998).

40.    Beginning in FFY 2004, however, CMS calculated the wage index by excluding wage data from hospitals that were previously "subsection (d) hospitals" but that had elected to convert to CAH status prior to FFY 2004. Instead of looking at whether a hospital was a subsection (d) hospital in the Survey Year, CMS determined that it would look at whether the hospital was a subsection (d) hospital in the Rate Year. If the hospital had been granted CAH status before the beginning of the Rate Year, CMS would remove its survey data from the calculation of the wage index, even though it was a rural subsection (d) hospital in the Survey Year. 68 Fed. Reg. 45,346, 45,397-98 (Aug. 1, 2003).

41.    The statute requires the Secretary to develop a wage index based on a survey "of the wages and wage-related costs of subsection (d) hospitals in the United States." 42 U.S.C.A. § 1395ww(d)(3)(E). The statute does not grant the Secretary

discretion to refuse to use valid data from subsection (d) hospitals provided in response to wage surveys. Despite the statutory requirement to use data from all subsection (d) hospitals, the Secretary, in constructing the FFY 2005 Massachusetts wage indexes, excluded wage data from Nantucket Cottage Hospital, which had been a subsection (d) hospital during the Survey Year but had later converted to CAH status. The effect of this error was to misclassify Massachusetts as an "all-urban" state for FFY 2005, subjecting it to an Imputed Rural Floor Wage Index.

42.    The Secretary's action had two effects. First, it substituted an Imputed Rural Floor Wage Index for an actual rural floor wage index in Massachusetts in FFY 2005. The imputed rural floor was lower than the actual rural floor, thereby depriving certain urban Massachusetts hospitals of a wage index based on the actual rural floor in Massachusetts, subjecting them instead to the Imputed Rural Floor Wage Index for Massachusetts. Second, the Secretary's action had the effect of incorrectly including Massachusetts wage indexes in the computation of the Imputed Rural Floor Wage Index for New Jersey hospitals.

43.    Certain Massachusetts hospitals challenged the Secretary's position in *Anna Jaques Hospital, et al. v. Leavitt*, Civil Action No. 05-625(GK) (DDC). In an Opinion dated February 26, 2008, Judge Kessler of this court granted plaintiffs' motion for summary judgment. The court concluded that the Secretary's exclusion of Nantucket Cottage Hospital's wage data from its FFY 2001 Survey Year when calculating the FFY 2005 wage indexes for Massachusetts hospitals violated the statute and was arbitrary and capricious. The effect of the court's ruling, which the Secretary has asked the court to

reconsider, would be that the Secretary's conclusion that Massachusetts is an all-urban state in FFY 2005 is invalid.

### *The Imputed Rural Wage Index Floor - District of Columbia Excluded*

44.    In creating the Imputed Rural Floor Wage Index, the Secretary was addressing the "special circumstances of hospitals in all-urban states," 69 Fed. Reg. at 49,109-49,111 (Aug. 11, 2004), that is, states "with no rural area ... or a state in which there are no hospitals classified as rural." 42 C.F.R. § 412.64(h)(5). The Secretary included in the computation of the imputed rural floor wage indexes from Massachusetts, Rhode Island and New Jersey hospitals. The Secretary excluded from the computation the wage index for the District of Columbia hospitals, despite the fact that the District of Columbia has no rural areas and no hospitals classified as rural.

45.    In excluding the wage index from the District of Columbia from the Imputed Rural Floor Wage Index calculation, the Secretary gave no reasons for his action. By contrast, the Secretary went to lengths to discuss the status of Puerto Rico hospitals—which are not subsection (d) hospitals—and gave a number of reasons for rejecting the assertion that Puerto Rico should be included in the computation. Those reasons, however, not only do not apply to the District of Columbia and its subsection (d) hospitals, but rather demonstrate that the District of Columbia's all-urban status closely parallels that of the three other states that CMS described as all-urban.

46.    Notably, in justifying his position regarding Puerto Rico, the Secretary stated his belief that "it is more appropriate to compare the three individual all-urban states" based on their "similarities," observing that these three states each has a predominant labor market. Although the same is true for the District of Columbia—that

17

is, there is a predominant labor market—the Secretary nowhere explained why the wage index of the District of Columbia should not be included in the Imputed Rural Floor Wage Index computation. *See* 69 Fed. Reg. 48,916, 49,111 (Aug. 11, 2004). Because the District of Columbia has a single predominant labor market and has no rural areas and rural hospitals, there is no rational basis for the Secretary to treat the District of Columbia differently than other all-urban jurisdictions.

47.    The Act requires that the Secretary account for area differences in wage levels by using a "factor … reflecting the relative hospital wage level in the geographic area of the hospital" compared to national levels for other subsection (d) hospitals. 42 U.S.C.A. § 1395ww(d)(3)(E)(i).  In other words, the statutory purpose of the wage index is to compare—for wage level purposes—subsection (d) hospitals in a particular geographic and labor market with other subsection (d) hospitals situated around the country and to pay them accordingly, with the result being that similarly situated hospitals would have similar reimbursement.  By failing to include District of Columbia hospitals within the "all urban" computation, the Secretary acted in a manner inconsistent with this statutory purpose.

48.    The Secretary's decision to exclude the District of Columbia from the Imputed Rural Floor Wage Index calculation, without providing any explanation of that decision, is arbitrary, capricious, and an abuse of discretion.  Hospitals in the District of Columbia, just like hospitals in New Jersey, are located in an all-urban market with a predominant labor market.  As such, the District of Columbia wage index should be included as part of the computation of the Imputed Rural Floor.

## COUNT I

### The Inclusion of Massachusetts in the Calculation of the New Jersey Imputed Rural Floor Wage Index is Contrary to Law

49.    Paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

50.    The Administrative Procedure Act permits judicial review of agency actions, findings and conclusions that are not in accordance with law or are in excess of statutory jurisdiction, authority or limitations.  5 U.S.C.A. §§ 706(2)(A), 706(2)(C).

51.    The Secretary's failure to use FFY 2001 wage data from Nantucket Cottage Hospital in determining the FFY 2005 rural wage index for Massachusetts, thus misclassifying Massachusetts as an all-urban state, violates the requirement of 42 U.S.C.A. § 1395ww(d)(3)(E) that the Secretary adjust Medicare payments to subsection (d) hospitals to reflect geographic variations in hospital labor costs "on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages and wage-related costs of subsection (d) hospitals in the United States."

52.    The Secretary's determination that Massachusetts hospitals were entitled to an Imputed Rural Floor Wage Index for FFY 2005 is, accordingly, not in accordance with law and is in excess of the Secretary's statutory jurisdiction, authority and limitations.  It is therefore *ultra vires* and invalid and must be set aside.

53.    The Secretary's inclusion of the Massachusetts in developing the Imputed Rural Floor Wage Index for New Jersey, accordingly, is not in accordance with law and is in excess of the Secretary's statutory jurisdiction, authority and limitations.   It is therefore *ultra vires* and invalid and must be set aside.

19

## COUNT II

### The Inclusion of Massachusetts in the Calculation of the New Jersey Imputed Rural Floor Wage Index is Arbitrary, Capricious and an Abuse of Discretion

54.    Paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

55.    The Administrative Procedure Act permits judicial review of agency action, findings and conclusions that are "arbitrary, capricious, and an abuse of discretion." 5 U.S.C.A. § 706(2)(A).

56.    The Secretary's failure to use FFY 2001 wage data from Nantucket Cottage Hospital in determining the FFY 2005 rural wage index for Massachusetts is arbitrary, capricious, and an abuse of discretion, in violation of 5 U.S.C.A. § 706(2)(A).

57.    The Secretary's determination to classify Massachusetts as an "all-urban" state and to include Massachusetts wage indexes to compute the New Jersey Imputed Rural Floor Wage Index is arbitrary and capricious and an abuse of discretion in violation of Administrative Procedure Act, 5 U.S.C.A. § 706(2)(A).

## COUNT III

### The Exclusion of The District of Columbia in the Calculation of the New Jersey Imputed Rural Floor Wage Index is Contrary to Law

58.    Paragraphs 1 through 57 are incorporated by reference as if fully set forth herein.

59.    The Administrative Procedure Act permits judicial review of agency actions, findings and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C.A. §§ 706(2)(A), 706(2)(C).

60.     Payments made under PPS are required to account for "area differences in hospital wage levels." The statutory purpose of the wage index, therefore, is to compare for wage index purposes subsection (d) hospitals in a particular geographic and labor market with other hospitals around the country and to pay them accordingly, with the result being that similarly situated hospitals receive similar reimbursement.   When computing the New Jersey Imputed Rural Floor Wage Index, the Secretary failed to include the District of Columbia wage index contrary to this statutory purpose. Thus, the Secretary's decision to apply to New Jersey hospitals a Imputed Rural Floor Wage Index that does not include the District of Columbia wage index is "not in accordance with the law" and is in excess of his statutory jurisdiction, authority and limitations.

## COUNT IV

### The Exclusion of the District of Columbia in the Calculation of the New Jersey Imputed Rural Floor Wage Index is Arbitrary, Capricious and an Abuse of Discretion

61.     Paragraphs 1 through 60 are incorporated by reference as if fully set forth herein.

62.     Despite the fact that, for all other wage index purposes, the Secretary includes data from District of Columbia hospitals along with data from all other "states" in computing the wage index, he excluded the District of Columbia for purposes of computing the Imputed Rural Floor Wage Index.

63.     The Secretary defined an all-urban state as one with no rural area and no rural hospital.   The District of Columbia had no rural area and no rural hospitals. Moreover, in the course of identifying all-urban jurisdictions, the Secretary relied on whether a jurisdiction had a single predominant labor market.   The District of Columbia

has a single predominant labor market. Thus, there is no rational basis for the Secretary's decision to exclude the District of Columbia as an all-urban jurisdiction for purposes of computing the Imputed Rural Floor Wage Index. The Secretary, when excluding the District of Columbia wage index from the Imputed Rural Floor Wage Index computation, gave no reason for his decision. The Secretary's decision to exclude the District of Columbia wage index in determining the FFY 2005 Imputed Rural Floor Wage Index, without explanation and without a rational basis, was arbitrary, capricious, and an abuse of discretion, in violation of 5 U.S.C.A. § 706(2)(A).

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff Hospitals respectfully request that this Court:

A.    Enter judgment for Plaintiffs and against the Defendant on all counts of this Complaint;

B.    Declare the Secretary's determination of the New Jersey Imputed Rural Floor Wage Index applicable to Plaintiff Hospitals for FFY 2005 as contrary to law and invalid;

C.    Declare the Secretary's determination of the Imputed Rural Floor Wage Index applicable to Plaintiff Hospitals for FFY 2005 is arbitrary, capricious and an abuse of discretion;

D.    Order the Secretary to recalculate the Imputed Rural Floor Wage Index for New Jersey, applicable to Plaintiff Hospitals, by excluding Massachusetts wage indexes and including the District of Columbia wage index;

E.    Enjoin Defendant from utilizing a Imputed Rural Floor Wage Index that includes Massachusetts and excludes the District of Columbia.

F.    Order Defendant to pay Plaintiff Hospitals' FFY 2005 Medicare PPS payments based on a recalculated the Imputed Rural Floor Wage Index applicable to New Jersey hospitals;

G.    Award Plaintiff Hospitals interest on the amount in controversy pursuant to 42 U.S.C.A. § 1395oo(f)(2) and other costs; and

H.    Provide such other and further relief as the Court deems proper.

Dated:  May 21, 2008

Respectfully submitted,

James P. Holloway (DC Bar # 415173)
OBER, KALER, GRIMES & SHRIVER
A PROFESSIONAL CORPORATION
1401 H Street, N.W., Fifth Floor
Washington, D.C.  20005-3324
202-408-8400

Carel T. Hedlund (DC Bar # 384066)
OBER, KALER, GRIMES & SHRIVER
A PROFESSIONAL CORPORATION
120 East Baltimore Street
Baltimore, Maryland  21202-1643
410-685-1120

Thomas W. Coons (DC Bar # 935353)
OBER, KALER, GRIMES & SHRIVER
A PROFESSIONAL CORPORATION
120 East Baltimore Street
Baltimore, Maryland  21202-1643
410-685-1120

Attorneys for Plaintiff Hospitals

#1999756

23

08-872

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Atlanticare Regional Medical Center, et al. | MICHAEL O. LEAVITT, in his official capacity as Secretary of the United States Department of Health and Human Services |

88660

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Atlantic Cty., NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

James P. Holloway, Carel T. Hedlund, Thomas W. Coons
Ober, Kaler, Grimes & Shriver, P.C.
1401 H Street, N.W., Suite 500
Washington, DC 20005
202-408-8400

Case: 1:08-cv-00872
Assigned To : Kessler, Gladys
Assign. Date : 5/21/2008
Description: Admn. Agency Review

---

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government
Plaintiff

O 3 Federal Question
(U.S. Government Not a Party)

⊙ 2 U.S. Government
Defendant

O 4 Diversity
(Indicate Citizenship of
Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

---

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O A. Antitrust**

☐ 410 Antitrust

**O B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**⊙ C. Administrative Agency Review**

☒ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

**O D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**O E. General Civil (Other)      OR      O F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

③

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Judicial review of adverse agency decision on Medicare payment under 42 USC § 1395oo(f)(1)

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** in excess of $50 million! Check YES only if demanded in complaint<br>**JURY DEMAND:**  YES ☐  NO ☒ |
|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☒  NO ☐  If yes, please complete related case form. |
|---|---|---|

DATE  May 21, 2008   SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.